UNITED STATES of America,
Plaintiff-Appellee,

v.

Vincent Moran DOSS,
Defendant-Appellant.

No. 75–1463.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1975.

Decided Nov. 18, 1976.

As Amended Jan. 20, 1977.

Robert W. Andrews, Erich W. Merrill, Memphis, Tenn., for defendant-appellant.

Thomas F. Turley, Jr., U.S. Atty., Memphis, Tenn., W. Hickman Ewing, Jr., Memphis, Tenn., for plaintiff-appellee.

Before EDWARDS, McCREE and MILLER,* Circuit Judges.

EDWARDS, Circuit Judge.

Involved in this case is a possible revival of a version of the English Star Chamber, an institution which helped produce the American Revolution. The question posed here is one left open by the very recent decision of the United States Supreme Court in *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), a decision for which this court had waited before deciding our instant appeal.

Our analysis of this case indicates that the defendant (whose posture before the court is hardly appealing) suffered fundamental deprivations of several important rights. Taken together, we believe these abuses deprived him of due process of law, and serve to invalidate his indictment and conviction for perjury committed before the grand jury.

The facts in this case, due largely to appellant Doss' extensive criminal activity, are complex ones. After Doss had been convicted in three separate jury trials on a variety of felony charges resulting in cumulative sentences totaling 15 years, he was also tried on an indictment consisting of four counts of perjury based on his testimony before a federal grand jury. Count I was dismissed by the District Judge. At jury trial appellant was found not guilty on Count II, but he was found guilty on Counts III and IV. The District Judge sentenced him on Counts III and IV to three years in the penitentiary to be served concurrently with each other and with other longer sentences.

The principal problem in this appeal arises from the fact that appellant's testimony before the grand jury took place after he had been the subject of two sealed indictments, one for causing another person to possess counterfeit, in violation of 18 U.S.C. § 472 (1970), and the other for causing two other persons to possess narcotics with intent to distribute, in violation of 21 U.S.C. § 841(a) (1970). When Doss was called before the grand jury, the Assistant United States Attorney informed him that he was "a target" of criminal investigations and had a constitutional right to remain silent. Doss was given full Miranda-type warnings and was allowed to consult with his lawyer who was present outside the grand jury room. He was not, however, advised that he was already under two indictments by that same grand jury. And, of course, he was not allowed to have counsel present with him in the grand jury room.

Appellant Doss refused on Fifth Amendment grounds to answer many questions. He did, however, answer a number of questions, four of which resulted in his indictment for perjury. One of these pertained to counterfeit money. As noted above, although Doss was unaware of it at the time of the grand jury questioning, a sealed indictment for violation of a federal statute relating to counterfeit money had already been laid against him.

The question pertaining to counterfeit and the answer which appellant gave is as follows:

Q. Has Paul E. Patterson ever tried to sell you any counterfeit money?

A. No, sir, or if he did, I don't know anything about it.

Analysis of the details of this case shows that the counterfeit offense as to which appellant was previously indicted pertained to appellant's furnishing Patterson with $1,000 of counterfeit in January of 1972. On the other hand, the question and answer now alleged to be perjurious appear to pertain to Patterson's testimony that he offered appellant counterfeit in October of 1972. The discrepancy in dates and the reversal of roles of the parties might create doubt that any answer to the question posed to appellant could have been used in any way in the government's case under the then pending indictment. Reading of the

*Honorable William E. Miller died April 12, 1976, and did not participate in the decision of this case.

complete transcript of questioning of appellant before the grand jury indicates, however, that a number of questions dealt with counterfeit and that some of them were broad enough in scope to involve the pending counterfeit indictment. Additionally, Patterson's testimony at appellant's trial on the counterfeit charge shows that Patterson's offer of counterfeit in October of 1972 consisted in part of some of the very counterfeit which appellant Doss had been indicted for causing Patterson to possess. These facts indicate that the government employed the grand jury at least in part as a discovery instrument in a case where an indictment had already been handed down and the case was awaiting trial.

The government seems to have made the same use of the grand jury also to obtain information useful in prosecuting the narcotics indictment. Nevertheless, Doss' answer to any inquiry arguably applicable to the narcotics indictment was not made the basis for a perjury count.

In contrast, the question addressed to Doss which the jury found he answered falsely under Count III of the indictment was totally unrelated to the offenses for which he had been indicted. It appears to have been material to the investigation of an entirely separate crime.

The cases previously argued in this appeal by appellant include *United States v. Lawn,* 115 F.Supp. 674 (S.D.N.Y.1953); the Fifth Circuit's opinion in *United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974) (an opinion which we have noted has now been reversed), and *United States v. Rangel,* 496 F.2d 1059 (5th Cir. 1974).

In the last two of these cases, the Fifth Circuit held that perjurious grand jury testimony should be suppressed because of Fifth Amendment violations. These holdings are now superseded by the Supreme Court's ruling in *United States v. Mandujano, supra.* There the Supreme Court unanimously said that abuse of Fifth Amendment rights did not excuse perjury. Significantly, however, for our purposes, and again apparently unanimously on this point, the Supreme Court noted, citing *Brown v.*

*United States,* 245 F.2d 549 (8th Cir. 1957), that there might be abuse of process requiring an entirely different result.

All three Supreme Court opinions in *Mandujano* cited the *Brown* case with approval. In *Brown* the Eighth Circuit stated the principal issue as follows:

> The record makes it clear that the counts in question have to do with answers given by defendant while under oath before a grand jury called, sworn and sitting in the district of Nebraska and that the offenses charged in these counts have to do with matters which occurred in the Eastern District of Missouri. If the grand jury of Nebraska was without authority to inquire into offenses committed in Missouri, then the answers of defendant, even if false, would not amount to perjury.

*Brown v. United States, supra* at 552.

The Eighth Circuit's analysis of the record found that no evidence pertaining to the Missouri events on the basis of which Brown was indicted for perjury was relevant to any offense committed in Nebraska and that Brown's answers could not be made the basis for a perjury prosecution, since the grand jury was acting beyond its powers in conducting the inquisition.

Justice Stewart's opinion in the *Mandujano* case summarized the holding of *Brown v. United States* by saying, "The perjury prosecution must be barred because of prosecutorial conduct amounting to a denial of due process." *United States v. Mandujano, supra* at 609, 96 S.Ct. at 1793 (P. Stewart, J., concurring opinion) (1976). We believe our present appeal presents similar prosecutorial abuse and violation of due process.

█ In Justice Brennan's concurring opinion in *Mandujano* he points out:

> It is clear that the government may not in the absence of an intentional and knowing waiver call an indicted defendant before a grand jury and there interrogate him concerning the subject matter of a crime for which he already stands formally charged. *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2

L.Ed.2d 321 (1958); *United States v. Calandra,* 414 U.S. at 345, 346, 94 S.Ct. at 613, 38 L.Ed.2d at 569.

*United States v. Mandujano, supra* at 594, 96 S.Ct. at 1785. (W. Brennan, J., concurring opinion).

This is, however, exactly what has been done in our instant case and it leads directly to our reversal of these convictions. In *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956), Mr. Justice Black sustained an indictment based upon hearsay under the historic broad powers of the grand jury as preserved in our criminal law by the Fifth Amendment to the United States Constitution. See also *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In his concluding paragraph, however, he noted in contradistinction, "In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict."

When a person under our system of law has been indicted for a crime, the government has no more right to call him before a grand jury and question him about that crime than it has to call an unwilling defendant to the stand during trial of the case. *United States v. Lawn,* 115 F.Supp. 674, 677 (S.D.N.Y.1953). *See also In re National Window Glass Workers, et al.,* 287 F. 219, 227–28 (N.D.Ohio 1922).

On this issue the District Judge in *United States v. Lawn, supra,* said:

A mere witness may properly be subpoenaed to appear and testify before the grand jury, though he may not be compelled to incriminate himself, *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979, and he need not be warned of his privilege but to avail himself of it he must plead it whenever the answer to a question may incriminate. *United States v. Benjamin,* 2 Cir., 1941, 120 F.2d 521; *United States v. Miller,* D.C., 80 F.Supp. 979.

However, upon the trial of the defendant in a criminal case, it would be a clear violation of a defendant's right against self-incrimination under the Fifth Amendment of the Constitution to compel him to take the stand, testify and produce his records, relating to the matter with which he is charged. Unless he volunteers, it would invalidate the trial. *United States v. Housing Foundation of America, Inc.,* 3 Cir., 1949, 176 F.2d 665. Title 18 U.S.C.A. § 3481 makes a defendant a competent witness *at his own request.* It is thus improper to call him as a witness without a request on his part. 8 Wigmore on Evidence, 3rd Edit., p. 393; 3 Wharton's Criminal Evidence, 11th Edit., p. 1960.

For similar reasons, an indictment is invalid if a defendant against whom a criminal information has been filed, is called by the prosecution as a witness before the grand jury to obtain evidence tending to sustain an indictment against him, which supersedes the earlier information. *Mulloney v. United States,* 1 Cir., 1935, 79 F.2d 566; *United States v. Miller, supra; United States v. Kimball,* C.C., 117 F. 156. In neither situation is the defendant required to claim the privilege. The law grants him this protection. It is a right which he alone may waive. *Id.* at 677.

In the *Kimball* case the Court made reference to the ancient rule that a defendant could not testify for himself and stated:

The law of the state has removed the disability of a defendant in a criminal case to testify, and permits him to stand mute or to testify as he wills, and protects his choice from any suggestion of the prosecuting party, as well as unfavorable inference by the jury. No right of this nature springs from the constitution. Such a defendant could not, before the statute, be asked to take the witness stand, because, on account of his status, he could not be a witness voluntarily or compulsorily; and the disability now continues, unless of his own motion he elect to remove it. To demand or to request that he shall be sworn is an attempt to choose for him, which constrains his acceptance and coerces him to make public choice in the presence of the jury. This

would be misconduct on the part of the prosecution, intended and calculated to harm the defendant, disturb his free choice, and prejudice the jury in the case of declination. This protection relates solely to a defendant.

*United States v. Kimball,* 117 F. 156, 160 (C.C.S.D.N.Y.1902).

■ The Fifth Amendment to the United States Constitution reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." The function of the grand jury clearly terminates with the issuance of the indictment. It has no relationship to the trial itself. We find no constitutional, statutory or case authority for employment of the grand jury as a discovery instrument to help the government prepare evidence to convict an already indicted defendant. Such a use of the grand jury would pervert its constitutional and historic function.

■ The record in our instant appeal shows clearly that such an abuse of the grand jury process was undertaken by the United States Attorney. As noted above, appellant had been twice secretly indicted and was unwarned of those facts. Nonetheless, the United States Attorney undertook substantial questioning of appellant about the subject matter of the secret indictments. Where a substantial purpose[1] of calling an indicted defendant before a grand jury is to question him secretly and without counsel present without his being informed of the nature and cause of the accusation about a crime for which he stands already indicted, the proceeding is an abuse of process which violates both the Sixth Amendment and the due process clause of the Fifth Amendment. Indictments for perjurious answers given in such a proceeding must be quashed because the proceeding itself is void.

Reversed and remanded for dismissal of the perjury indictments.

---

[1] We make no comment upon what result would flow from calling a defendant indicted for one crime to appear and give evidence before a grand jury upon a wholly different and separable offense, since no such facts are before us.