30 F.3d 126
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
IN RE: GRAND JURY PROCEEDINGS UNITED STATES OF AMERICA, Appellee,
v.
John Doe, Appellant.
 No. 94-1704
 United States Court of Appeals,
First Circuit.
 July 22, 1994.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge ]
 Peter B. Krupp on brief for appellant.
 Donald K. Stern, United States Attorney, and Fred M. Wyshak, Jr., Assistant United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Torruella, Cyr and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Respondent John Doe appeals from the denial of a second motion to vacate an order of civil contempt. For the reasons that follow, we affirm.
 
 I.
 
 2
 In the fall of 1993, respondent was called to appear before a grand jury investigating alleged organized crime figures. Citing a fear of reprisals against himself and his family, respondent refused to testify. He thereafter persisted in his recalcitrance despite receiving an order of immunity and a government offer of placement in the federal witness protection program. On December 8, 1993, after three separate hearings, the district court held him in civil contempt. Finding a reasonable likelihood that incarceration would eventually succeed in coercing his testimony, the court ordered that respondent be imprisoned for a period of eighteen months, until the expiration of the grand jury's term, or until he purged himself of contempt-whichever occurred first. See 28 U.S.C. Sec. 1826(a). We thereafter affirmed the order of contempt, rejecting various procedural challenges advanced by respondent to the proceedings below. In re Grand Jury Proceeding (Doe), 13 F.3d 459 (1st Cir. 1994).
 
 
 3
 In March 1994, respondent filed a motion to vacate the contempt order. In a memorandum and accompanying affidavit, he contended that three months in prison had done nothing to weaken his resolve not to testify. He reiterated that his concerns for the safety of himself and his family were such that he would never relent. He also stated that he had recently learned from the government that the grand jury's term was due to expire in September 1994, with the result that his incarceration would necessarily end, at the latest, by that date. The serendipitous prospect of being released nine months earlier than originally anticipated, he explained, only strengthened his resolve to remain recalcitrant. In response, the government argued that respondent had failed to establish that his continued incarceration would have no realistic possibility of inducing a change of heart. See, e.g., In re Grand Jury, 851 F.2d 499, 502 (1st Cir. 1988). It also contended that, because the grand jury investigation was ongoing and because other witnesses were involved in contempt proceedings, releasing respondent after such a short period would encourage similar defiance by others and undermine the efficacy of the contempt sanction. The district court, in a margin order, denied the motion to vacate "after a thorough review of the entire record, upon the grounds urged by the government."[1] Respondent filed no appeal from this ruling.
 
 
 4
 In June 1994, respondent filed a second motion to vacate the contempt order. His accompanying memorandum and affidavit largely echoed those submitted earlier. He again insisted that his resolve remained unshaken despite his ongoing imprisonment. And he again argued that the prospect of being released no later than September 12, 1994, when the grand jury's term was due to expire, only reinforced his determination. In his view, because six months in prison had failed to induce his testimony, another three months would likewise fail to do so. The district court, prior to receiving a response from the government, summarily denied the motion in a margin order. Respondent now appeals. He contends that the court ignored pertinent factual matters, applied incorrect legal standards, and abused its discretion in finding that incarceration continued to pose a realistic possibility of inducing him to testify.
 
 II.
 
 5
 Due to the absence of district court findings, much of respondent's argument on appeal proceeds by indirection. He suggests that, in order to infer the basis for the court's ruling on the second motion, one must turn to the articulated basis for its ruling on the first motion. There, as mentioned, the court relied on the "grounds urged by the government." Respondent therefore undertakes an examination of those "grounds" and proffers several alleged deficiencies therein. He contends that the government there made no mention of his supporting affidavits or of the scheduled termination of the grand jury, improperly characterized the maximum eighteen-month term as presumptively coercive, and impermissibly relied on the effect that his release might have on other would-be contemnors. In turn, respondent deems it appropriate to attribute these alleged analytical shortcomings to the district court, thereby concluding that the denial of the second motion to vacate was in error.
 
 
 6
 This line of reasoning falters on various grounds.[2] First, it is of course speculative to assume that the district court, in denying the first motion to vacate, adopted every proposition advanced in the government's opposition, and that it thereafter relied on the identical reasoning in denying the second motion. Second, the suggestion that the district court overlooked certain factual matters-such as the scheduled termination of the grand jury and other subjects mentioned in respondent's affidavits-appears entirely misplaced. These matters were prominently addressed by respondent in the papers supporting both of his motions to vacate. As mentioned above, the court twice stated that it had carefully reviewed respondent's submissions concerning his first motion. There is no reason to suspect that the court was any less diligent with regard to the second motion.
 
 
 7
 Moreover, even if we were to assume that the court did adopt the government's opposition in its entirety as the basis for denying the second motion, we find nothing therein so amiss as to necessitate a remand. The government's allusion to the eighteen-month statutory maximum as being presumptively coercive consisted simply of a quotation from In re Grand Jury Investigation (Braun), 600 F.2d 420, 427 (3d Cir. 1979) (endorsed in Simkin v. United States, 715 F.2d 34, 37 (2d Cir. 1983)). This reference fell well short of proposing the type of rigid, virtually irrebuttable presumption condemned in In re Parrish, 782 F.2d 325, 326, 328 (2d Cir. 1986). At no point did the government question the notion that district courts retain "a broad discretion ... to determine that a civil contempt sanction has lost its coercive effect upon a particular contemnor at some point short of eighteen months." Sanchez v. United States, 725 F.2d 29, 31 (2d Cir. 1984) (per curiam) (quoting Simkin, 715 F.2d at 37)). Nor did the government dispute that such a determination must be an individualized one "based on all the circumstances pertinent to th[e] contemnor." In re Parrish, 782 F.2d at 328.
 
 
 8
 In turn, the government's reference to the effect of respondent's release on other potential contemnors-a consideration specifically endorsed in In re Crededio, 759 F.2d 589, 592 (7th Cir. 1985)-was benign. Whether reliance on such external factors might under some circumstances be improper is a question we need not decide, for it is apparent that no impropriety occurred here. Respondent complains that this argument created the risk that his incarceration was imposed without due regard to his individualized circumstances. Yet the government's contention fell well short of a plea, of the type condemned in Simkin, 715 F.2d at 38, that respondent be imprisoned "as a warning to others who might be tempted to violate their testimonial obligations." And it is apparent that the district court's inquiry here was properly focused. We noted in the earlier appeal that the court had "conducted a careful evaluation of the individual circumstances pertaining to respondent." In re Grand Jury Proceeding (Doe), 13 F.3d at 463. The government's opposition to the first motion highlighted such factors. We have no reason to believe that the district court, in denying the second motion, suddenly switched gears and placed principal reliance on other, possibly impermissible criteria.[3]
 
 III.
 
 9
 Respondent also contends that the court abused its discretion in determining that further incarceration posed a realistic possibility of inducing him to testify. Given that the inquiry to be made in this regard "is far removed from traditional factfinding," In re Parrish, 782 F.2d at 327, a district court enjoys "wide latitude in gauging whether incarceration will ... remain ... coercive." In re Grand Jury (Doe), 13 F.3d at 463; accord, e.g., Simkin, 715 F.2d at 38. Although respondent contends that his persistence over the past seven months has established his unshakable resolve, it must be observed that "the desire for freedom, and concomitantly the willingness to testify, increases with the time spent in prison." In re Grand Jury Investigation (Braun), 600 F.2d at 428. And, we note, other courts have upheld similar orders after even lengthier periods of imprisonment. See, e.g., In re Crededio, 759 F.2d at 589 (ten months); In re Grand Jury Investigation (Braun), 600 F.2d at 420 (eight months). We find no abuse of discretion.
 
 
 10
 Affirmed.
 
 
 
 [1]
 On the same day of this ruling, respondent sought leave to file a reply brief in response to the government's opposition. The court later acted on this motion as follows: "While the court allows the motion and has carefully reviewed the attached reply brief, it adheres to its earlier denial of the petition to vacate the finding of contempt."
 
 
 [2]
 We need not decide whether, as the government argues, respondent has waived these contentions by failing to appeal from the denial of his first motion to vacate
 
 
 [3]
 Respondent has requested, as an alternative form of relief, that the case be remanded for particularized findings of fact. Yet we do not understand him to be arguing that such findings are required in all such cases. Given that the court's view here is readily inferable from the context, see Ticketmaster- New York, Inc. v. Alioto, F.3d , 1994 WL 114817, at * 2 (1st Cir. Apr. 13, 1994) (court of appeals may affirm district court on any independently sufficient ground reflected in the record), we see no need to remand for this reason, much less any need to consider imposing such a requirement across-the- board